```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 13-22905-CV-GAYLES
                                      (09-20630-CR-MOORE)
                              MAGISTRATE JUDGE P. A. WHITE
JOSEPH P. MAZARD,        :

       Movant,           :

v.                       :         REPORT OF
                                   MAGISTRATE JUDGE
UNITED STATES OF AMERICA, :

       Respondent.       :
_____
```

Introduction

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his sentence entered after he was convicted of multiple drug offenses and a firearm offense in case number 09-20630-CR-MOORE.

The Court has reviewed the movant's motion, the government's response, the movant's reply with a memorandum, the Presentence Investigation Report ("PSI") and all pertinent portions of the underlying criminal file. After a review of the motion, counsel was appointed for the movant and an evidentiary hearing was scheduled to address the movant's claims that (1) his initial counsel failed to return a signed plea agreement to the United States Attorney's office; and (2) that his trial counsel failed to advise him that he could plead to the superceding indictment and receive a reduced sentence. The evidentiary hearing was held on January 13, 2015.

Construing the movant's claims liberally as afforded *pro se* litigants, pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the movant raises the following two claims:

> 1. He was denied effective assistance of counsel, where he signed a plea agreement and counsel failed to return the signed plea agreement to the United States Attorney's office.
>
> 2. He was denied effective assistance of counsel, where his lawyer failed to advise him that he could enter an open plea to the superceding indictment.

At the start of the evidentiary hearing the movant withdrew his second claim, acknowledging that he could not establish prejudice because an open plea would have resulted in a mandatory life sentence.

## Procedural History

The movant, along with several co-defendants, was initially charged by indictment with conspiracy to possess with intent to distribute controlled substances (Count 1); possession with intent to distribute crack cocaine (Count 16); and two counts of possession with intent to distribute cocaine (Count 17 & 18). (CR-DE#3). On March 19, 2010, a superceding indictment was filed. (CR-DE# 295). In the superceding indictment the movant was charged with conspiracy to possess with intent to distribute controlled substances (Count 2); two counts of possession with intent to distribute crack cocaine (Count 13 & 15); possession with intent to distribute cocaine (Count 14); possession with intent to distribute cocaine and marijuana (Count 20); possession of a firearm in furtherance of a drug trafficking crime (Count 21); and possession of a firearm by a convicted felon (Count 22). On May 20, 2010, the government filed its notice of intent to rely on prior convictions to enhance the movant's sentence under 21 U.S.C. §§ 841(b) and 851(a). (CR-DE# 399). Under the superceding indictment and sentencing enhancements the movant was subject to a mandatory life

sentence if convicted of all counts.

The movant was represented by Oscar Rodriguez, Jr. from the time of his first appearance until May 25, 2010 when Zena Duncan entered her appearance. (CR-DE# 403). Duncan represented the movant through trial.

At trial, the jury found the movant guilty of Counts 2, 15, 20, 21 and 22. (CR-DE# 514). He was adjudicated guilty on those charges and sentenced to 360 months imprisonment. (CR-DE# 746). The sentence consisted of terms of 300 months imprisonment as to each of Counts 2, 15, 20 and 22, to be served concurrently with each other, and 60 months as to Count 21, to run consecutively to the terms imposed in Counts 2, 15, 20 and 22. The sentence was below that recommended by the sentencing guidelines.[1] (CR-DE# 756, p. 64-65).

## Evidentiary Hearing

The Undersigned conducted an evidentiary hearing on January 13, 2015. The movant testified along with the three attorneys who had represented him throughout the criminal case. The first to testify was the movant.

The movant claimed that Oscar Rodriguez, Jr. frustrated his plea negotiations. Rodriguez and Saam Zangeneh represented the movant. They first met after his August arrest at which time they discussed representation. The first substantive conversations about the case occurred on September 28, 2009 when the charges were discussed. The next meeting occurred in November when the movant

---

[1] The sentencing guidelines recommended a minimum sentence of 360 months plus a mandatory consecutive 60 months for the firearm charge, resulting in a sentencing range of 420 months to life. (CR-DE# 756, p. 64).

and Rodriguez discussed the evidence obtained in discovery. There were no discussions about entering a plea at this November meeting. The movant and Rodriguez next met on January 12, 2010.

On January 12 the petitioner and counsel discussed the plea offer. Both Rodriguez and Zangeneh were present at this meeting. Rodriguez showed him the plea agreement offered by the government. They briefly went over the plea agreement which would subject the movant to a sentence exposure from 5 to 40 years. The movant testified that he agreed to the offer and signed the plea agreement, ending the meeting.

The movant next met with Rodriguez on February 25, 2010. The movant was of the opinion that as of this date he had signed the plea agreement so he did not have much to talk about. However, he also testified that at this meeting he told Rodriguez he was having second thoughts about the plea agreement. He wanted to change the charges to which he was pleading. He also wanted assurance no further charges would be brought. In addition to the discussions about the plea, the two discussed the fact that his prior state convictions made him a career criminal. According to the movant, Rodriguez told him that he still had the first plea agreement. The movant claimed that he never wanted to go to trial.

The next meeting with an attorney occurred in March when the movant met with Zangeneh. He claimed that although a superceding indictment was imminent Zangeneh told him not to worry about it and just go along with the plea. He claimed that he was unaware that a superceding indictment would be filed because he was in the "bullpen" during the March hearing where the superceding indictment was announced. He claimed that he first learned that the superceding indictment had been filed in April 2010. The movant was

4

arraigned on the superceding indictment on April 7, 2010.

The next meeting with counsel did not occur until May, after the movant decided to get a new attorney. Rodriguez came to see the movant after learning of the movant's decision. Before the meeting the movant had become aware of the filing of the superceding indictment and the sentencing enhancement information. There was no discussion about what happened to the plea.

The movant claimed that Rodriguez never discussed any sentencing enhancements under 21 U.S.C. § 851. However, they did discuss the firearms and drugs found at the time of his arrest. The movant acknowledged that he wanted to change the original plea agreement and that he wanted assurances that he would not face additional charges for the guns and drugs found at the time of his arrest. He claims that Rodriguez never told him of the government's response to his counteroffer.

According to the movant, he expected his new attorney, Duncan, to get him the same offer that had been previously extended. When he learned that the original plea agreement was not available he was still interested in plea negotiations. He acknowledged that no plea offer was extended by the government. However, he denied that he was not willing to cooperate with the government as part of a plea.

The movant was confronted with two letters he sent to Duncan after he was convicted. He acknowledged asking Duncan to admit that she was ineffective as a way of vacating his conviction and sentence.

Saam Zangeneh was representing the movant along with

5

Rodriguez. At the time he also represented the movant's girlfriend on related state charges. On January 12, 2010 Zangeneh and Rodriguez met with the movant. Zangeneh did not remember the movant signing a plea agreement at that meeting. He noted that if the movant had signed a plea agreement it would have impacted his girlfriend's case.

Rodriguez represented the movant from August 2009 until Duncan was substituted in May 2010. He met with the movant to discuss the charges on August 6, 2009. At subsequent meetings they discussed the evidence provided in discovery, including video and audio tapes. Rodriguez and the movant agreed that if the only evidence was the video and audio tapes then the government would have difficulty proving its case. The other evidence would involve co-defendants, whose credibility could be impeached. The movant was confident that his cousin would not become a government witness, which would make Counts 16 and 17 difficult to prove. They also discussed the other evidence that had been seized at the time of the movant's arrest that was not charged in the indictment, noting that the evidence could result in additional charges in a superceding indictment.

Rodriguez testified that they discussed the possibility of a plea, however it was not seriously considered because the most damning evidence had not yet been charged. He advised the movant that if the case went to trial there would be a superceding indictment.

Rodriguez received the government's plea offer on November 4, 2009. He presented the plea agreement to the movant on January 12, 2010. The petitioner was not seriously considering the plea because of the loose ends involving the uncharged evidence. It was

6

concerning to the petitioner and counsel that the plea agreement did not include the charges that could be brought based on the evidence found at the time of the movant's arrest. They did not want to enter a plea agreement that left that open, whether it be charged by the federal government or the state. The movant absolutely did not sign the plea agreement, nor did he tell Rodriguez that he wanted to accept the agreement. The movant knew that he faced significant exposure on the uncharged evidence.

Rodriguez next met with the movant on February 25, 2010. He could not recall the exact content of the meeting. Rodriguez telephoned the prosecutor in February with a counter proposal to the plea agreement. He expressed the movant's concerns about the loose ends involving the other evidence that had not been charged. He also expressed a desire to plea to different charges than those in the initial plea offer. He testified that if he had in his possession a signed plea agreement he would have told the prosecutor and set the case down for a change of plea hearing. He had never in his career had a signed plea agreement in his hand and continued to litigate a case.

Rodriguez and the movant attended a pretrial conference on March 5, 2010. Rodriguez could not remember if the movant was at counsel table or in another room listening in to the proceedings. It was at this proceeding that the government announced the impending filing of the superceding indictment. Rodriguez was hopeful that the case would be resolved prior to the filing of the § 851 enhancements but he did not guarantee anything to the movant. He acknowledged that if the government had made a satisfactory offer the movant would have pleaded guilty. The movant never told Rodriguez that he wanted to plead guilty, he only told him to get a better offer.

7

Attorney Zena Duncan became counsel for the movant on May 25, 2010. She first met with the movant on May 17, 2010 at which time they discussed prior plea negotiations. The discussions were brief as she had not yet been retained. She did not recall the movant telling her that there was a signed plea agreement, but she was clear that the movant knew the case was not over. At a subsequent meeting the movant brought up the prior plea negotiations and a potential plea. She obtained a copy of the draft plea agreement. She understood that plea negotiations had been ongoing, but no plea agreement had been reached. The movant repeatedly told Duncan he wanted to plead guilty. Duncan's attempts to get a plea agreement were unsuccessful because the movant did not want to cooperate with the government. According to Duncan the movant refused to cooperate as a matter of integrity, telling her that "He's not a snitch."

Duncan met with the movant in November 2012 after he requested that she come to visit him in the Miami-Dade County Stockade. The movant wanted her to claim that she was ineffective in order to vacate his sentence. She absolutely refused to do so.

### Discussion of Claims

The movant challenges counsel's effectiveness for allegedly failing to submit a signed plea agreement to the government to resolve his case. In order to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(*en banc*). The standard is the same for claims of ineffective assistance on appeal. Matire v.

Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995).

Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11 Cir. 1994).

In his sole remaining claim the movant asserts that he was denied effective assistance of counsel where his attorney failed to present a signed plea agreement to the government. In his motion the movant alleged that in November 2009 the government extended a plea offer to counsel. During discussions between the movant and counsel the movant alleges that he advised counsel that he wished to accept the government's offer. He further alleged that he signed the plea agreement. He claimed that counsel never told him that he had not submitted the signed plea agreement and that he did not discover this until months later. He contends that if counsel had promptly returned the signed plea agreement his sentence would have been substantially less. Thus the entire claim raised by the movant rests upon the question of whether or not he signed the plea agreement sent to counsel in November 2009. Or as was stated by the movant's counsel at the evidentiary hearing: "The issue here is

9

whether this defendant desired to plead guilty to the plea that he was presented with."

After taking testimony on this issue the Undersigned makes the following findings of fact related to the issue of whether the movant desired to plead guilty to the plea as it was presented. On November 4, 2009 the prosecutor faxed a copy of the plea agreement to Rodriguez. On January 12, 2010, Rodriguez and Zangeneh met with the movant to discuss the plea. The testimony of Rodriguez, that the movant did not sign the plea agreement and did not want to accept this plea agreement, is found credible. This testimony is credible for several reasons. First, it defies logic that counsel would have in his possession a signed plea agreement that would have resolved the case and not advised the prosecutor of such a fact. Second, Zangeneh, who was present and whose other client would most likely been affected by such a plea agreement, has no recollection of the movant signing the plea agreement. Third, the movant never advised his new counsel that he had signed a plea agreement. As noted by Duncan, the movant advised her that there had been plea negotiations, she never testified that the movant told her he had signed a plea agreement. Additionally, the movant himself acknowledged that he made a counteroffer to the prosecution. Finally, as noted by Rodriguez, the movant was concerned about additional charges based on the evidence found at the time of his arrest. As part of the counteroffer the movant was seeking some assurance that he would not face additional charges. Based on all of this evidence, weighed against the movant's self-serving and uncorroborated testimony that he signed the plea agreement, the Undersigned finds that the movant did not sign the plea agreement nor did he desire to agree to the initial plea

agreement.[2]

In light of the finding that the movant neither signed the plea agreement or desired to enter a plea under the plea agreement his claim must fail. The claim relied upon the allegation that counsel was ineffective for failing to communicate the movant's acceptance of the plea. Clearly counsel did no such thing. Therefore, the movant has failed to establish that counsel was ineffective. The movant is not entitled to relief on his claim.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2255 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining the meaning of this term) (citation omitted). Therefore, it is recommended that the Court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering

---

[2] The movant's testimony is further undermined by his attempt to persuade Duncan to admit to having been ineffective in her representation. The correspondence and conversations with Duncan evidence a motivation to go to any length in an attempt to vacate this conviction and sentence. Standing alone this could have caused the Undersigned to question the movant's credibility.

the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## Conclusion

It is therefore recommended that this motion to vacate sentence be denied and the case closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 28th day of January, 2015.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Joseph Mazard
     86293-004
     FEDERAL DETENTION CENTER
     P.O. BOX 019118
     MIAMI, FL  33101

     Paul Domenic Petruzzi
     Alfred I. Dupont Building
     169 East Flagler Street
     Suite 1241
     Miami, FL 33131


     Dwayne Edward Williams
     United States Attorney's Office
     99 N.E. 4th Street
     Miami, FL 33132