UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE No. 13-22905-CIV-GAYLES/WHITE

**JOSEPH B. MAZARD**,

    Movant,

vs.

**UNITED STATES OF AMERICA**,

    Respondent.

_____/

## ORDER

**THIS CAUSE** came before the Court on Magistrate Judge Patrick A. White's Report and Recommendation (the "Report") [ECF No. 57], entered on January 28, 2015, and Joseph Mazard's ("Mazard") Objections to the Report (the "Objections") [ECF No. 63]. The Court, having reviewed the Objections, the Report, and the record, and being otherwise fully advised, finds Mazard's claim is without merit for the reasons set forth below.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    **a.  Uncontested Facts**

On July 24, 2009, the government filed an indictment charging Mazard with conspiracy to possess with intent to distribute controlled substances (Count 1), possession with intent to distribute crack cocaine (Count 16), and two counts of possession with intent to distribute cocaine (Counts 17 and 18). Attorneys Oscar Rodriguez, Jr. and Saam Zangeneh represented Mazard. Zangeneh also represented Mazard's girlfriend on related state charges. On September 28, 2009, both counsel discussed the charges with Mazard. In November 2009, Rodriguez met

with Mazard to discuss the evidence obtained in discovery. At that meeting, there were no discussions about plea negotiations. Both counsel later met with Mazard on January 12, 2010, to discuss a plea offer conveyed by the government, which would have subjected him to a sentence of 5 to 40 years. Mazard and Rodriguez met once more on February 25, 2010.[1] Mazard sought assurance that the government would not be bringing additional charges. In March 2010, Mazard met with Zangeneh. At that meeting, Mazard did not ask Zangeneh about the alleged signed plea agreement.[2]

On March 19, 2010, the government filed a superseding indictment charging Mazard with conspiracy to possess with intent to distribute controlled substances (Count 2), two counts of possession with intent to distribute crack cocaine (Counts 13 and 15), possession with intent to distribute cocaine (Count 14), possession with intent to distribute cocaine and marijuana (Count 20), possession of a firearm in furtherance of a drug trafficking crime (Count 21), and possession of a firearm by a convicted felon (Count 22). The same day, the government filed a notice of intent to rely on prior convictions to enhance Mazard's sentence.

Mazard and Rodriguez met again in May 2010 to discuss Mazard's decision to get a new attorney. In late May 2010, Zena Duncan, Esq., became Mazard's attorney. At trial, a jury convicted Mazard of multiple drug offenses and a firearm offense. He was sentenced to 360 months of imprisonment.[3]

---

[1] Mazard testified at the hearing before Judge White that at this meeting he told Rodriguez that he wanted to change the charges to which he was pleading.
[2] Mazard claims that at this meeting, Zangeneh told him to not worry about the possibility of a superseding indictment.
[3] Sometime after his trial convictions and sentence, Mazard first alleged that he had previously signed a plea agreement.

### b. The Instant Motion and Evidentiary Hearing

On August 13, 2013, Mazard filed a *pro se* motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (the "Motion") [ECF No. 1], claiming that Rodriguez was ineffective for allegedly failing to present a signed plea agreement to the government. The case was referred to Judge White, pursuant to Administrative Order 2003-19, for a ruling on all pre-trial, non-dispositive matters and for a Report and Recommendation on any dispositive matters. [ECF No. 3].

Judge White held an evidentiary hearing on January 13, 2015. At that hearing, Mazard testified that he agreed to the plea offer conveyed by the government and signed it at his January 12, 2010, meeting with Rodriguez and Zangeneh. [Tr., p. 14, lns. 19-21]. Mazard also testified that at the February 25, 2010, meeting, he wanted to change the original plea agreement, as he sought assurance that he would not face additional charges for the guns and drugs.[4] [Tr., p. 17, lns. 3-7]. Mazard testified that Rodriguez never informed him of the government's response to his counteroffer, and that he expected his new counsel, Duncan, to get the same offer that had been previously extended. [Tr., p. 102, lns. 9-22; p. 105, lns. 8-9]. Finally, Mazard testified that he was always interested in plea negotiations. [Tr., p. 17, lns. 22-24]. On cross-examination, Mazard admitted that he asked Duncan to admit that she was ineffective so that his convictions and sentence could be vacated. [Tr., p. 109, lns. 22-25].

At the evidentiary hearing, Zangeneh testified that he did not recall Mazard signing a plea agreement at the January 12, 2010, meeting. [Tr., p. 115, lns. 21-22]. Zangeneh also stated that it would have been significant to him if Mazard had signed a plea agreement, as that would have impacted Mazard's girlfriend's case. [Tr., p. 115, lns. 23-25; p. 116, lns. 8-13].

---

[4] The Court notes that over a month had elapsed since the prior meeting, yet Mazard never asked about a change of plea hearing.

Rodriguez testified that on November 12, 2009, the United States Attorney's Office emailed him a copy of the proposed plea agreement. [Tr., p. 128, lns. 11-14]. Rodriguez also testified that he and Mazard discussed the evidence provided in discovery and they agreed that the government would have difficulty proving its case. [Tr., p. 125, lns. 11-16]. According to Rodriguez, Mazard was confident that his cousin would not become a government witness. [Tr., p. 126, lns. 3-5]. Rodriguez testified that he and Mazard discussed the possibility of a plea, but did not seriously consider it because he had not yet been charged for all of the guns and drugs found at the time of his arrest. [Tr., p. 127, lns. 1-7]. According to Rodriguez, Mazard was concerned that the plea agreement would expose him to other charges in the future. [Tr., p. 132, lns. 4-9]. Rodriguez stated that because of that concern, Mazard neither signed the plea agreement nor did he inform Rodriguez that he wanted to accept the plea agreement. [Tr., p. 131, lns. 24-25; p. 132, lns. 1-3].

Duncan testified that she did not recall Mazard telling her that he had signed a plea agreement, and that it was clear to her that he knew that the case was not over. [Tr., p. 26, lns. 12-16]. Duncan also testified that her attempts to get a plea agreement were unsuccessful because Mazard refused to cooperate with the government. [Tr., p. 45, lns. 6-24]. Additionally, Duncan stated that after Mazard was convicted and sentenced, he sent her a letter expressing his desire to find a loophole [to vacate his convictions], but she refused to lie for him. [Tr., p. 39, lns. 5-16; p. 43, lns. 2-12].

In his Report, Judge White found Rodriguez's testimony credible for several reasons. First, Judge White concluded that it defies logic that Rodriguez would have in his possession a signed plea agreement that would have resolved the case and did not inform the government. [ECF No. 57 at 10]. Second, Judge White found that Zangeneh, who was present and whose

other client would most likely be affected by such a plea agreement, had no recollection of Mazard signing a plea agreement. *Id.* Third, Judge White found that Mazard never advised Duncan that he signed a plea agreement because Duncan testified that Mazard advised her that there had been plea negotiations — and she never testified that Mazard told her that he signed a plea agreement. *Id.* Fourth, Judge White noted that Mazard made a counteroffer to the government. *Id.* Accordingly, Judge White issued his Report recommending that: (1) the Motion be denied; (2) the Court deny a certificate of appealability; and (3) this case be closed. On March 9, 2015, Mazard timely filed his Objections to the Report,[5] challenging Judge White's finding that Mazard never signed — nor desired to sign — the plea agreement and, consequently, that Mazard failed to show that his counsel was ineffective. The government filed its response to the objections on March 20, 2015. [ECF No. 64].

## II. STANDARD OF REVIEW

A district judge must conduct a *de novo* review of any part of a magistrate judge's report and recommendation that has been properly objected to. *See* 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 72 (b)(3); *see also Stokes v. Singletary*, 952 F.2d 1567, 1576 (11th Cir. 1992) ("[W]henever any party files a timely and specific objection to a finding of fact by a magistrate, the district court has an obligation to conduct a *de novo* review of the record with respect to that factual issue.") (quoting *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988)).

In his objections to the Report, Mazard essentially challenges Judge White's credibility findings. When a magistrate judge's factual findings are based on witness testimony in court, the district court must review the transcript or listen to a recording of the proceedings. *LaConte*, 847

---

[5] On February 9, 2015, this Court granted Mazard's motion for an extension of time to file his objections to the Report. [ECF No. 61].

F.2d at 750.  However, before a court rejects a magistrate judge's credibility determination, it must first rehear the disputed testimony before rejecting.  *See United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001); *see also United States v. Thelisma*, 559 F. App'x 898, 901 (11th Cir. 2014) ("Our precedent is clear: 'the district court should not enter an order inconsistent with credibility choices made by the magistrate [judge] without personally hearing the live testimony of the witnesses whose testimony is determinative.'") (quoting *Louis v. Blackburn*, 630 F.3d 1105, 1109 (5th Cir. 1980)).  "[T]his general rule is subject to a small exception in the 'rare case' where 'there . . . [is] found in the transcript an articulable basis for rejecting the magistrate's original resolution of credibility and that basis . . . [is] articulated by the district judge.'" *Cofield*, 272 F.3d at 1306.

### III. DISCUSSION

To establish ineffective assistance of counsel, Mazard must show: (1) that his counsel's performance was deficient; and (2) that his counsel's deficient performance prejudiced the defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The first prong requires the Court to determine whether "identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.  The second prong requires that Mazard show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 669.  Therefore, Mazard must establish that his trial counsel's performance was deficient and that he was prejudiced by that deficiency. Failure to establish either prong of the test will defeat the claim.

The Motion must be denied because Mazard has not established that his attorney's performance was deficient.  The central issue raised by the Motion is whether Mazard actually signed a written plea agreement.  As there is no physical evidence of a signed plea agreement,

Judge White properly conducted an evidentiary hearing to determine whether such an agreement ever existed. After considering the evidence, including the testimony of Mazard and his prior counsel, Judge White determined that Mazard's testimony was not credible and that Mazard never signed a plea agreement. At the hearing, no witness other than Mazard testified that he accepted the government's offer or that a signed plea agreement ever existed. Rather, the record contains mere correspondence regarding potential plea agreements.

However, the record is replete with reasons why Mazard did not sign — or intend to sign — a plea agreement. First, Mazard was concerned that the plea agreement would expose him to additional charges and made a counteroffer to the government. Second, he was confident that the government could not prove its case. Third, Duncan testified that she was negotiating a plea agreement after Mazard claims that he signed one. Fourth, Mazard asked Duncan to lie for him to assist his efforts to have his convictions vacated. The fact that Duncan has no interest in this matter bolsters her credibility. Importantly, it was not until after Mazard was convicted and sentenced that he first asserted to the Court that he previously signed a plea agreement. Notably, Mazard did not attempt to bring this issue to the court's attention before his trial commenced. As such, the Court agrees with Judge White's findings and conclusions of law. Thus, Mazard's ineffective assistance claim fails because he cannot establish that his counsel was deficient for failing to deliver a signed plea agreement to the government. Since Mazard did not establish his counsel was deficient, this Court need not address whether Mazard suffered prejudice.

Finally, Judge White determined that a certificate of appealability should be denied. A Section 2255 motion will not be heard unless a circuit justice or a circuit or district judge issues a certificate of appealability. *See* 28 U.S.C. § 2253 (c)(1)(B); *see also* Fed. R. App. P. 22 (b)(1). However, if a petitioner establishes a substantial showing that his constitutional rights have been

denied, then a certificate of appealability may be issued.  § 2253 (c)(2).  Based on the foregoing, Mazard has not demonstrated that he has been denied a constitutional right.  Therefore, the Court will not grant a certificate of appealability.

**IV.    CONCLUSION**

Accordingly, it is

**ORDERED AND ADJUDGED** that the Report [ECF No. 57] is **AFFIRMED AND ADOPTED** as follows:

1. The Motion [ECF No. 1] is **DENIED**.

2. The Court will not issue a certificate of appealability.

3. The Court directs the Clerk of the Court to **CLOSE** this case, and all pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of July, 2015.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:    Magistrate Judge Patrick A. White
       Counsel of record